HARPER v. COMMISSIONERS OF NEW HANOVER COUNTY.

(Filed October 6, 1903.)

1. TAXATION—*Fences—Stock Law—Acts 1903, ch. 56—Acts 1903, ch. 554—Const., Art. VII, sec. 9—Acts 1893, ch. 290.*

Acts 1903, ch. 554, being an act supplemental to Acts 1903, ch. 56, repealing the stock law in a township in New Hanover county, and providing that the commissioners of the county shall fence where necessary and defray the expenses from the general fund in the county treasury, and thereafter levy on all taxable real estate in the county a tax sufficient to replace the amount drawn out of the general fund, if regarded as authorizing a tax, violates the Constitution, Art. VII, sec. 9, directing that "all taxes levied by any county * * * shall be uniform and *ad valorem* upon all property" in the county.

2. TAXATION—*Fences—Stock Law—Assessments—Acts 1903, ch. 554.*

Acts 1903, ch. 554, if regarded as an act authorizing the imposition of special assessments, is invalid, because it authorizes assessments on the real estate of the entire county, including the real estate of the township withdrawn from the benefits of the stock law, and which would receive no benefits from the fences erected by the commissioners.

3. TAXATION—*Fences—Stock Law—Assessments—Acts 1903, ch. 554.*

Acts 1903, ch. 554, cannot be held valid so far as it authorizes the commissioners to erect fences when necessary and to draw out of the general fund of the county money to pay for the same, and invalid so far as it authorizes the imposition of a tax or assessment to replace the money so used, for the court cannot presume that the legislature would have directed the expense of building the fences to be taken out of the general fund without also making provision for replacing the money withdrawn.

4. TAXATION — *Fences—Stock Law—Assessments—County Commissioners—The Code, sec. 2824.*

The Code, sec. 2824, providing that for the purpose of building stock law fences the county commissioners may levy a special assessment on all taxable real estate "within the county, township or

district which may adopt the stock law," does not authorize the
imposition of an assessment on the real estate of a township
withdrawn from the benefit of the stock law by express legisla-
tive enactment for the purpose of raising money to replace the
money withdrawn from the general fund to pay the expenses
of fences erected by the commissioners.

ACTION by John W. Harper and others against the Board
of Commissioners of New Hanover County, heard by Judge
R. B. Peebles, at Chambers, in Wilmington, N. C., during
May Term, 1903, of the Superior Court of NEW HANOVER
County. From a judgment for the plaintiffs the defendants
appealed.

E. K. Bryan, for the plaintiffs.
Rountree & Carr and J. D. Bellamy, for the defendant.

CONNOR, J. By the provisions of chapter 290 of the Pub-
lic Laws of 1899, the whole of New Hanover County, "except
that portion which lies between the Cape Fear river and the
Northeast Cape Fear river," was placed under the "stock
law" and the Commissioners directed to build all necessary
fences, etc. By chapter 56 of the Laws of 1903, entitled
"An act to repeal the stock law in Federal Point township in
New Hanover County," ratified January 29, 1903, it was
enacted that from and after June 1, 1903, the act of 1899
shall not apply to that portion of New Hanover described
in said act." Section 2 of this act directs the Commissioners
of said county to have erected a fence where necessary, "and
for defraying the expenses of constructing said fence and
gates the said board may draw upon the county treasurer of
said county of New Hanover for a sum sufficient therefor out
of the general fund of said county, and may thereafter levy on
all real estate taxable by State and county in said territory
so fenced out and collect a tax sufficient to replace the amount

so drawn out of the general fund," etc. In the passage of this act the provisions of section 14, Art. II of the Constitution were complied with, but the proposition to make the change in the law and levy the assessment was not submitted to the voters of the territory affected or of the county of New Hanover. On the 29th January, 1903, an act was passed by the Legislature entitled "An act supplemental to an act entitled an act to repeal the stock law in Federal Point township, New Hanover county." By this act the words "territory so fenced out" are stricken out and the word "county" inserted in lieu thereof, thus making the original act to impose upon the County Commissioners the duty of levying a tax on all *real property* in said county. This last named act was not passed in accordance with the requirements of section 14, Article II of the Constitution. The plaintiffs are citizens and tax-payers of the county of New Hanover, and owners of land in Federal Point township. They allege, and it is admitted by the answer that in accordance with the provisions of said act the defendants, Commissioners, "are about to build the said fence, and have actually surveyed out the lines, according to the said act, and have advertised for bids for building said fence, as authorized by said act, and will, unless restrained by this honorable Court, build the said fence in accordance with the terms of said act, and levy the cost of the same against the real property situate in the territory wherein the said fence law is re-established by said act, and will proceed to collect the same," etc. Plaintiffs allege, also, "that they will receive no benefit whatever from the said act, but the said act only restores plaintiffs and other owners of real estate in the said territory their common law right of pasturage." To this allegation the defendants, Commissioners, say that they have no knowledge or information sufficient to form a belief, and are advised that they are immaterial to this action.

J. T. Burnett, upon his application, was permitted to come in and make himself a party defendant and thereupon files an answer to the complaint, admitting the material facts, but denying that the acts are void, and alleging that the construction of said fence is a necessary county expense which defendant county can erect with or without legislative enactment, and levy a tax within the constitutional limits sufficient to pay for the cost of the same. He also denies the allegation that plaintiffs will receive no benefit from the construction of said fence. He admits that the Commissioners have decided to assess the cost and expense of constructing the fence against the real property in the territory enclosed by the fence and not against the real property of the entire county, and that they will proceed to collect the tax on real property situated in said territory, and that they have surveyed the lines and advertised for bids, etc. The plaintiffs pray that the defendants may be enjoined from proceeding to erect the fence and to levy the assessment as they threaten to do. Upon the complaint a restraining order was issued, and upon the hearing before Judge Peebles the said order was continued to the hearing, and the defendants appealed.

If the enactment of January 29, 1903, cannot be sustained as an assessment, it is clear that it cannot be sustained as an authority to levy a tax, because it is not uniform, in that it authorizes the tax to be levied only upon the real estate in the territory, whereas the Constitution, Art. VII, sec. 9, directs that "all taxes levied by any county, city, town or township shall be uniform and *ad valorem* upon all property in the same, except property exempted by this Constitution," and this Court held, in *Cobb v. Elizabeth City,* 75 N. C., 1, that "all taxes, therefore, must be levied as well on personal as on real property." Hence the question whether this (the building of fences) be a "necessary expense" within the meaning of section 4, Art. V of the Constitution, is not presented. But

the defendants say that the tax authorized to be levied is a special assessment and comes within the principle frequently announced by this Court in regard to assessments for local improvements. The principle upon which these assessments are sustained is thus stated by *Mr. Justice Dillon:* "A constitutional provision that taxation shall be equal and uniform throughout the State does not apply to local assessments upon private property to pay for local improvements." 2 Dillon Mun. Corp., sec. 617, cited in *Cain v. Commissioners,* 86 N. C., 8. In *Busbee v. Commissioners,* 93 N. C., 143, *Smith, C. J.,* says: "But these local assessments are not under all the restraints put upon the taxing power. They stand upon a different footing and rest upon the equitable and just consideration that lands rendered more valuable by the improvements ought to contribute to the expense of making the improvement, and that these expenses ought not to fall upon the entire body of the tax payers, as well those who are not benefited as those who are benefited. The advantage is to the land, and to the persons only as owners of the land." It would seem, therefore, that whatever validity, if any, the two acts referred to have, is by virtue of the principle announced in the case cited.

We are thus brought to a consideration of the question whether they can be sustained as local assessments. The theory upon which assessments of this character have been sustained by our Court is that a benefit clearly exceptive and plainly perceived must enure to the property upon which it is imposed. A review of the several decisions of this Court sustaining the assessments for the purpose of erecting fences around common territory within which live stock shall not be permitted to run at large will show that as the greater burden is thus removed from the land owner, he, as such, should bear the expense by which this result is brought about. The whole legislation upon this subject, which has in the past few

years been extended to a very large portion of the State, is based upon the theory that land owners are thereby relieved of the necessity of maintaining fences around their cultivated fields, and that the establishment of a common fence around the entire county or other territory is a benefit to such lands, in that it relieves the owners of this burden. The doctrine is thus stated by *Smith, C. J.,* in *Cain v. Commissioners, supra:* "The general law requires a sufficient fence to be built and kept up around all cultivated land to protect it from the depredations of stock, at a very great and unceasing expense, becoming the more onerous as the material used in its construction becomes scarcer and more costly. The enactment proposes to dispense with separate enclosures for each man's land, and substitute a common fence around the county boundary to protect all agricultural lands from the inroads of stock from abroad, and a fencing-in of stock owned within its limits. It creates a community of interest in upholding one barrier in place of separate and distinct barriers for each plantation, and thus in the common burden lessens the weight that each cultivator of the soil must otherwise individually bear. As the greater burden is thus removed from the landowner, he, as such, ought to bear the expense by which this result is brought about. The special interest benefited by the law is charged with the payment of the sum necessary in securing the benefit. This, and no more, is what the statute proposes to do, and in this respect is obnoxious to no just objection from the taxed land proprietor, as it is free from any constitutional impediments." It was in accordance with this principle that the Act of 1899 was passed, by which the benefits of the stock law were secured to the county of New Hanover. The legislation of 1903 is based upon an entirely different and contradictory theory. Certainly if the benefits of the stock law are withdrawn from the land owners of Federal Point township and they are thus required to maintain

individual fences around their separate parcels of land, it is difficult to see how they are benefited or their lands relieved of any burden by erecting a fence separating them from the other portions of the county. We concur with his Honor's view as set out in the judgment: "If it be true, as has been frequently held by our Supreme Court, that in changing from the old system of individual fences around cultivated fields to the new system of a common fence to protect the cultivated fields enclosed by the common fence, the lands within said fence receive a common benefit equal to or greater than the burden of keeping up said common fence, then it must necessarily follow that in abolishing the new system and restoring the old, so far as Federal Point township is concerned, no special benefits will result to the lands in Federal Point township to support the tax as an assessment. If the act is enforced, as the defendants are attempting to enforce it, the lands in Federal Point township will be taxed to build a fence to keep their stock from running on the other lands of New Hanover County, and also to keep up its individual fences around cultivated fields in said township." This would seem to be conclusive in the disposition of this cause.

In addition, however, to what we have said, the supplemental act, while it may be invalid as authorizing the imposition of a tax upon the people of the whole county, is certainly valid as withdrawing from the Commissioners the power to levy a tax within the territory so fenced out, leaving them without authority to levy any tax or assessment whatever to pay for building the fence. It is suggested, however, that if this be the result of the legislation, that the other portion of the act of January 29, 1903, may be valid and impose upon the Commissioners the duty of erecting the fence and paying for it out of the general fund. While it is well settled that an act may be valid in part and invalid in part, it is equally well settled that when it is manifest that the act contemplates

and provides for one general scheme or purpose, and the parts are so interdependent one upon the other that it cannot be supposed that the General Assembly would have enacted the law with the invalid portions eliminated, the valid portion will not be sustained. The principle is thus stated by *Chief Justice Shaw,* in 2 Gray, 84: "If the different parts are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that if all could not be carried into effect the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them." *Pollock v. Farmers Loan and Trust Co.,* 158 U. S., 601. We cannot suppose that the Legislature would have directed the expense of building this fence to be taken out of the general fund of the county and made no provision for replacing it by a special assessment imposed upon the lands, if any, that were benefited thereby. If this construction should be given the act, it is doubtful whether it could be sustained, under the decisions of this Court, as a necessary expense. The defendants suggest, however, that the tax must be sustained under the provisions of section 2824 of The Code. We concur with his Honor in holding that the purpose of this section is exactly opposite to that for which it is sought to be invoked. It is therein provided that "for the purpose of building stock-law fences the Board of Commissioners of the county may levy and collect a special assessment upon all real property taxable by the State and county within the county, township or district *which may adopt the stock law,* but no such assessment shall be greater than one-fourth of one per centum of the value of said property." The territory within which the proposed assessment is to be levied has not only not *adopted* but expressly *rejected* the stock law; hence such an assessment could not be sustained.

We are therefore of the opinion that his Honor correctly continued the injunction to the hearing.

Judgment affirmed.

CLARK, C. J., concurs on the ground:

1. That the authority conferred by the act of 29 January, 1903, to levy a tax upon the land owners of Federal Point Township to build the fence was repealed by the supplementary act.

2. That it cannot be levied upon the tax payers of the whole county, as required by the supplementary and repealing act, because it cannot be sustained as an assessment, there being no land relieved of a burden, and as an act "to impose a tax" is defective in not being laid on personalty as well as realty, because also it was not passed in the mode required by section 14, Art. II of the Constitution, and, besides, is further invalid, because, not being a "necessary county expense," the tax was not voted by the people. Const., Art. VII, sec. 7.

3. It cannot be levied under The Code, sec. 2824, for that authorizes an assessment upon realty in any territory adopting a stock law. This is an anti-stock law, and, besides, has not been adopted by any territory.